IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

CARLO CLARKE                                                                    PLAINTIFF

V.                                    NO. 3:04CV00255 JWC

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                                         DEFENDANT

**MEMORANDUM AND OPINION**

Plaintiff, Carlo Clarke, appeals the final decision of the Commissioner denying his claim for Disability Insurance Benefits (DIB).

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996). Provided that substantial evidence supports the Commissioner's decision, this Court may not reverse even if the record also provides substantial evidence to support a contrary outcome. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).

It is well settled that the claimant has the burden of proving his disability by establishing a physical or mental impairment lasting at least twelve months that prevents him from engaging in any substantial gainful activity. *Ingram v. Chater,* 107 F.3d 598, 601 (8th Cir. 1997). The Social Security Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities

which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

On November 23, 2001, Plaintiff applied for DIB alleging an onset of disability of March 15, 1998, due to bipolar disorder, manic depression, anxiety disorder, and high blood pressure (Tr. 6, 66, 30-32, 93). On April 16, 2004, the ALJ issued his decision denying benefits (Tr. 11-21). At the time of the ALJ's decision, Plaintiff was 43 years old with a high school education and auto mechanic training, and past relevant work experience as a janitor/custodian; a food service worker/kitchen helper; a security guard, a retail clerk/cashier, and a meat department stock laborer (Tr. 48-55, 75-80, 274).

The ALJ analyzed Plaintiff's claim according to the familiar five-step sequential evaluation. He found: (1) Plaintiff met the nondisability requirements for a Period of Disability and Disability Insurance Benefits through December 31, 2003; (2) he had not engaged in substantial gainful activity; (3) his medically determinable impairments were severe; (4) they did not meet or equal one of the listed impairments; (5) his allegations and testimony regarding the nature and severity of his impairments and his ability to work were not totally credible; (6) he retained the residual functional capacity (RFC) to lift-carry and push-pull 50 pounds occasionally and 25 pounds frequently, with the ability to sit, stand and/or walk 6-8 hours in an 8-hour workday (at least 2 hours in a continuous period); he would experience only mild pain from over-the-counter medications; he was restricted to simple unskilled to low semi-skilled work activity in which contact with supervisors, coworkers, and the public was superficial in nature; however, he had the ability to briefly meet-greet others, make change and give simple instructions and/or directions; further, he should avoid work in large crowds; and (7) his past relevant work as a janitor/custodian

worker, a kitchen helper, a security guard, and a meat department stock laborer did not require the performance of work-related activities precluded by his RFC (Tr. 20-21). Therefore, the ALJ concluded that Plaintiff was not disabled.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because (1) the ALJ erred in his credibility determination, and (2) the ALJ erred in his RFC determination.

First, Plaintiff argues that the ALJ erred in his credibility determination. (*Plaintiff's Appeal Brief,* 8-11.) Contrary to Plaintiff's argument, the ALJ properly assessed Plaintiff's credibility in accordance with *Polaski v. Heckler,* 739 F.2d 1320,(8th Cir. 1984), and substantial evidence supports his finding. In *Polaski,* the Court stated that when assessing credibility, an ALJ is required to examine all of the evidence and the claimant's prior work record, as well as the following factors: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; (5) functional restrictions. *Id.* at 1322. Plaintiff has stated he is unable to work because of stress (Tr. 114). However, his stress has not affected his daily activities (Tr. 56-57). Furthermore, although he claims to be anti-social, he participates in church groups, is the block captain of his Neighborhood Watch Group, and denies having problems relating to others (Tr. 84, 86, 124). In May 1997 Plaintiff was admitted to VAMC [Veterans Administration Medical Center] (Tr. 190-193). He claimed that the Lithium that he had been taking since 1981 was "toxic"; his Lithium was tapered off completely, and replaced with Zoloft, Depakote, Atenolol, and Ativan (Tr. 193). Since then Plaintiff's bipolar disorder has been controlled by his medications, and his medications

3

have kept him stable (e.g. Tr. 114, 127, 138).  The ALJ also considered Plaintiff's work record.  At the hearing, the ALJ noted that, due to the fact that Plaintiff was receiving retirement disability benefits from the postal service and VA disability benefits, his income was currently $10,000 more than Plaintiff ever earned working (Tr. 294). The ALJ commented that Plaintiff was in a difficult situation, because if he started working, he would lose both benefits. *Id.*  Thus, the ALJ apparently felt there was a secondary gain motive.  In conclusion, the ALJ properly assessed Plaintiff's credibility, and substantial evidence supports his finding.

Second, Plaintiff argues that the ALJ failed to evaluate Plaintiff's mental impairment, his non-exertional limitations, and their effect on his RFC.  (*Plaintiff's Appeal Brief,* 11-14.)  With regard to Plaintiff's mental capabilities, the ALJ found that Plaintiff retained the RFC to work where he would be restricted to simple unskilled to low semi-skilled work activity in which contact with supervisors, coworkers, and the public was superficial in nature; however, he had the ability to briefly meet-greet others, make change and give simple instructions and/or directions; further, he should avoid work in large crowds (Tr. 20-21).  Substantial evidence supports this finding.

Plaintiff underwent a psychological evaluation in May 1998 (Tr. 114-118).  He was diagnosed with bipolar disorder and borderline intellectual functioning.  Plaintiff reported that he could not work because he could not handle any stress (Tr. 114).  He also reported that his bipolar disorder was controlled with medication, and that his medication kept him stable, i.e., keeping him from becoming depressed or manic. *Id.*  He stated that everyday was good because he had learned how to cope (Tr. 115).  Psychologist Michael Guinle concluded, "His ability to understand and remember, ability to sustain concentration and

4

persistence, social interaction and adaptation skills do not appear to be significantly limited at the present time." (Tr. 117-18.)

Plaintiff underwent a second psychological evaluation in January 2002 (Tr. 119-125). Plaintiff reported that his last manic episode was in 1997 (Tr. 121). Although he claimed he did not know how he would deal with people (Tr. 119), he denied problems relating to others (Tr. 124). Psychologist Mary Ellen Ziolko diagnosed bipolar disorder; her prognosis was that he was currently doing pretty well, but that his condition was not expected to improve significantly in the next 12 months; she concluded, "His ability to understand, to carry out and remember instructions, and to respond appropriately to supervision, coworkers, and work pressure in a work setting is considered adequate at this time." (Tr. 125.)

Plaintiff underwent a third psychological evaluation in February 2004 (Tr. 254-268). Psychologist Richard Maddock administered six psychological tests: Clinical Interview, Minnesota Multiphasic Personality Inventory-2, Wechsler Adult Intelligence Scale-Third Edition, Medical Assessment of Ability to do Work Related Activities (Mental), Bender Gestalt Test, and Wide Range Achievement Test-3 (Tr. 257). Dr. Maddock diagnosed Plaintiff with bipolar disorder NOS (by history) in full remission with medication, and histrionic personality disorder (Tr. 265). Dr. Maddock concluded that there were not any problems that would keep Plaintiff from working (Tr. 268).

Plaintiff's outpatient records support this finding. In July 2000, Plaintiff reported that he was doing well, had no complaints, and his mood was stable (Tr. 144). In December 2000, Plaintiff was feeling well, without complaints. Although he was still sleeping during the day, and awake at night, he denied that this was causing any problems, as it had been

his habit for some time (Tr. 142). In April 2001, Plaintiff was doing fair; he had no problems with his medication; his mood was generally good although he felt down at times because he could not get out like he wanted to (Tr. 138). In September 2001, he was doing well, and involved in community activities (Tr. 131). In March 2002, he was doing fairly well, although he felt depressed about his financial situation. He reported being frustrated that his income was not where it should be and worried that if he did work, he would lose his [VA and Postal Service] benefits (Tr. 127). In conclusion, a review of the evidence shows that substantial evidence supports the ALJ's assessment of Plaintiff's residual functional capacity.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole that supports the decision of the ALJ. *E.g.*, *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992). The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. *Reed v. Sullivan,* 988 F.2d 812, 815 (8th Cir. 1993).

IT IS THEREFORE ORDERED that the final decision of the Commissioner is affirmed and Plaintiff's Complaint is DISMISSED, WITH PREJUDICE. Any pending motions are denied as moot.

DATED this 25th day of July, 2005.

_____
UNITED STATES MAGISTRATE JUDGE